# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
OFFICE OF SPECIAL MASTERS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
```
                                            *
PATRICIA ELLIOTT,                           *
                                            *
            Petitioner,                     *
                                            *
v.                                          *    No. 14-661V (ECF)
                                            *    CHIEF SPECIAL MASTER
                                            *    DENISE K. VOWELL
SECRETARY OF HEALTH                         *
AND HUMAN SERVICES,                         *
                                            *
            Respondent.                     *
```
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## RESPONDENT'S RULE 4(c) REPORT

On July 21, 2014, Patricia Elliott ("petitioner") filed a petition for compensation under the National Childhood Vaccine Injury Act of 1986, as amended ("the Vaccine Act" or "the Act"), 42 U.S.C. §§ 300aa-10 to -34. Petitioner alleges that she received the influenza ("flu") vaccine on November 7, 2013, and thereafter suffered adverse reactions, which resulted in "pain, difficulty obtaining restful sleep, and limited range of motion in her right shoulder." See Petition at 34.

In accordance with the Rules of the Court of Federal Claims, Appendix B, Vaccine Rule 4(c), the Secretary of Health and Human Services ("respondent") respectfully submits the following report in response to the petition. For the reasons set forth below, respondent has determined that petitioner's alleged injury is consistent with a shoulder injury related to vaccine administration ("SIRVA"), and recommends that compensation for this specific shoulder injury be awarded in this case.

**FACTS**

Petitioner was a 77 year-old single and self-employed psychologist when she received the influenza vaccination on November 7, 2013. A pharmacy receipt from Groveland Pharmacy is submitted as proof of vaccination, and a record of administration is recorded in the VAERS report, which is unsigned [Petitioner's Exhibits ("Pet. Ex.") 2, 7]. Petitioner had a history of macular degeneration, hearing loss, anxiety/depression, lichen sclerosis of the vulva, aortic valve regurgitation, and varicose veins. Her medications included Celexa and topical estrogen. She received the influenza vaccine yearly [Pet. Ex.4 at 24-26].

On November 21, 2013, two weeks after receiving her flu vaccination, petitioner presented to Dr. Runte, her primary provider, with the complaint of right arm pain after her influenza injection two weeks ago. Onset was noted to have been "shortly after the injection" and "immediately after the injection," with inability to sleep that night presumably secondary to pain. This pain was persistent and radiated to the elbow was sharp with sudden exacerbations related to movement, especially abduction. There was some tenderness with deep palpation over the right deltoid, and pain with very minimal movement into abduction or internal/external rotation. The impressions were depression and right arm pain. Celexa was refilled and Neurontin prescribed [Pet. Ex.4 at 22-23].

An ultrasound to rule out abscess was negative. Neurontin was not tolerated due to drowsiness and dizziness. At follow up two weeks later (four weeks after vaccination), petitioner reported some relief with ibuprofen and Tylenol, and had transient relief after one session of acupuncture. Full range of motion of the right upper extremity ("RUE") was found, with slight tenderness to palpation of the lower deltoid. Sensation to touch was intact. There was persistent pain with the maneuvers noted earlier. Lidocaine patch, Voltaren gel, and

Vicodin were prescribed. The impression was: **"Right arm sharp severe pain and the immediate onset after the injection is suggestive of a neuralgia."** Pain with rotation suggested rotator cuff tendonitis. Petitioner wanted to continue with acupuncture [Pet. Ex.4 at 19-21].

A physical therapy (PT) evaluation performed on March 21, 2014, revealed that petitioner had pain mid-upper deltoid RUE, onset within an hour of vaccination on November 7, 2013, with severe pain, persistently 3/10 severity since acupuncture. Moderate limitations with ADLs and reaching were noted [Pet. Ex.8 at 2-4].

The next follow up with Dr. Runte was March 25, 2014. Petitioner felt that her anxiety was getting worse and wanted to change from Effexor to BuSpar. Recent stressors included the death of her brother earlier that month. She provided a typed-out history of her chronic right shoulder pain, noting that she developed an aching sensation in the right deltoid area after influenza vaccination on November 7, 2013, "which lasted the first 48 hours after the injection." Acupuncture and massage had not been helpful, nor had various medications relieved her pain. She stated that she was in the fifth month of pain and it was having a big effect on her life: she had been working on a communication tool and trying to introduce it to the marketplace, but this had been limited by pain. She felt that she should be compensated personally and professionally. Examination was not recorded, and the plan was to proceed with MRI [Pet. Ex.4 at 15-17].

Two sessions of myofascial release therapy resulted in some reduction of pain and improvement in shoulder range of motion ("ROM") [Pet. Ex.1 at 2 (Affidavit of Patricia Elliott), Pet. Ex.10].

MRI of the right shoulder showed moderate subacromial bursitis, severe tendinosis of the supraspinatus and infraspinatus tendons, degenerative changes of the glenohumeroal joint, and

AC joint, degenerative change impinging on the rotator cuff [Pet. Ex.12 at 1-2].  By the end of April, six months after vaccination, petitioner reported to primary care that she still had fairly significant pain of the right upper arm deltoid at the site of her flu vaccine.  She was applying to the adverse reaction fund.  Examination noted non-tender right shoulder with slightly reduced ROM.  Steroid injection was given in the right subacromial space.  The impression was **"R arm pain s/p flu injection 11/2013, calcifying tendonitis of shoulder"** [Pet. Ex.4 at 11-13].

Petitioner had chiropractic treatments four times in early April 2014.  Onset of shoulder pain immediately after the flu vaccine was noted historically [Pet. Ex.11 at 2, 27].

A VAERS report completed by pharmacist Patrick Crosby was done May 3, 2014, but is unsigned.  Afluria vaccine had been administered in the right arm on November 7, 2013, with the adverse reaction of extreme pain (7/10 severity) at the injection site radiating to deltoid and elbow beginning at the time of injection.  The report notes that three months later the pain was 3/10 and there was decreased mobility and strength of the shoulder [Pet. Ex.6, Ex.7].

At follow up in primary care in mid-May 2014, petitioner complained of persistent symptoms of depression.  She had not tolerated BuSpar and was started on Zoloft, but this did not seem to be helping.  There was a long history of depression beginning as a teenager, with recent stresses related to her brother's death as well as the chronic shoulder pain.  The intra-articular steroid injection had been helpful and she was doing active strengthening and ROM exercises in PT.  Zoloft was stopped and Effexor started [Pet. Ex.4 at 8-10].

On May 19, 2014, petitioner followed-up with Dr. Runte with a letter she wrote about her RUE pain.  Dr. Runte composed a letter outlining the clinical history that is submitted as his Affidavit.  He concludes **"it is quite clear that her pain developed from the influenza vaccine and continues to be a problem at this time"** [Pet. Ex.4 at 6, Pet. Ex.3].

4

Petitioner submitted a letter from PT dated June 6, 2014:  ROM had improved with five sessions of PT, and now with significantly less pain and guarding, but needs 10-15 more sessions to return to pre-injury state [Pet. Ex.9].

By mid-June 2014, petitioner had applied to the vaccine injury fund.  She felt that Effexor was helping her depression and anxiety.  There was a strong history of traumas and she had been on antidepressants for several decades.  She continued to have moderate pain in the right shoulder several times a day that was relieved by ice/heat, and PT had been very helpful [Pet. Ex.4 at 3-5].

An Affidavit is submitted from acupuncturist Michael Irwin, dated July 7, 2014.  He states that the petitioner saw him on December 2, 2013, for pain in her right shoulder resulting from a flu vaccine.  He treated her that day, the next, and a week later.  After these three sessions she still had pain, lack of mobility, and trouble sleeping.  She did not schedule further appointments [Pet. Ex.14].

Ellie Owens, petitioner's partner, submitted an affidavit.  Since the flu vaccination of November 2013, she has helped petitioner with ADLs such as dressing and grooming.  She has assumed responsibility for chores in the home, driving, shopping, and caring for their horses.  She has observed petitioner to be in constant pain and having great difficulty obtaining restful sleep [Pet. Ex.13].

The petitioner states in her Affidavit that she had no history of injury or problems with her right shoulder prior to November 7, 2013.  About an hour after the injection she began to have excruciating pain in the right deltoid.  Her timeline concurs with the contemporaneous medical record.  She states that she was unable to drive for five months after vaccination due to shoulder pain.  Her plans to market a communication tool for business in January 2014 was

thwarted by her injury and she has been unable to work since the vaccination. The Affidavit is dated July 17, 2014.

As of July 17, 2014, petitioner continued to have decreased ROM in the right shoulder and could not use it for lifting, pushing, or any kind of strenuous activity.

## DISCUSSION

Medical personnel at the Division of Injury Compensation Programs, Department of Health and Human Services ("DICP"), have reviewed the petition and medical records filed in this case, as well as the relevant medical literature regarding petitioner's alleged shoulder injury. Based on that review, DICP has concluded that a preponderance of evidence establishes that the injury to petitioner's right shoulder was caused-in-fact by the administration of her November 7, 2013 flu vaccine, and that petitioner's injury is not due to factors unrelated to the administration of the October 7, 2011, flu vaccine. See 42 U.S.C. § 300aa-13(a)(1). In addition, given the medical records outlined above, the statutory six month sequela requirement has been satisfied. See  42 U.S.C. § 300aa-11(c)(D)(i); see also Pet. Ex. 3; Pet. Ex. 4. In light of the information contained in petitioner's medical records, respondent has concluded that her right shoulder injury is compensable as a "caused-in-fact" injury under the Act.

To facilitate the process of assessing the appropriate amount of compensation to be awarded in this case, respondent requests that petitioner submit documentation of past unreimbursable expenses, if any, that she incurred as a result of her injury, and a statement or record of any other facts that would aid respondent and the Special Master in assessing the appropriate amount of compensation to be awarded for petitioner's injury. Respondent also reserves the right to request other information that may be relevant to determining appropriate

damages in this case.  Finally, respondent notes that the scope of damages to be awarded is limited to petitioner's right shoulder injury and its related sequelae only.

## CONCLUSION

Respondent recommends that further proceedings be scheduled to determine the type and amount of compensation that should be awarded under the terms of the Vaccine Act with respect to the right shoulder injury that petitioner sustained as a result of the flu vaccine administered on November 7, 2013.

Respectfully submitted,

JOYCE R. BRANDA
Acting Assistant Attorney General

RUPA BHATTACHARYYA
Director
Torts Branch, Civil Division

VINCENT J. MATANOSKI
Deputy Director
Torts Branch, Civil Division

MICHAEL P. MILMOE
Senior Trial Counsel
Torts Branch, Civil Division

*/s/ GLENN A. MACLEOD*
GLENN A. MACLEOD
Senior Trial Counsel
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, D.C.  20044-0146
Tel.: (202) 616-4122

DATED:  October 28, 2014